UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| PAULA PAYNE | CIVIL ACTION NO. 05-820 |
| VERSUS | JUDGE: BRADY |
| WEST FELICIANA PARISH SCHOOL BOARD, ET AL. | MAGISTRATE-JUDGE: NOLAND |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S PARTIAL MOTION FOR SUMMARY JUDGMENT**

MAY IT PLEASE THE COURT:

**FACTS:**

Pursuant to the Court's directive, the parties were to file Motions regarding the viability of the plaintiff's 1st Amendment Retaliation claims post-*Garcetti*. Ms. Payne file a brief regarding the application of *Garcetti* to the facts at bar, specifically stating that genuine issues of material fact exist precluding the grant of summary judgment herein and precluding her from, in good faith, filing a Motion for Summary Judgment pursuant to Rule 56. Defendants filed a partial Motion for Summary Judgment on only part of the plaintiff's 1st Amendment claims, specifically leaving out any argument regarding the post-suspension conduct beginning March 14, 2005, which includes her demotion and undesirable reassignment and continuing harassment, as well as Ms. Payne's constructive discharge occurring in June, 2005. As no argument has been offered regarding these instance of conduct, they are not before the Court on summary judgment.

At the outset, Ms. Payne adopts fully and incorporates herein by specific reference, all evidence filed of record by her and all arguments contained in her Memorandum Regarding First Amendment Claims.

1

Ms. Payne further notes that to the extent defendants' arguments, in any way, rely on argument of Ms. Payne's prior counsel at the January 25, 2005, hearing, such information does not represent and is not competent evidence on summary judgment. Rule 56 requires consideration of depositions, discovery, affidavits, pleadings "on file". It is clear that any "argument" offered by Ms. Payne's prior counsel on January 25, 2005, is not proper summary judgment fodder. Noted, however, is that there is also nothing "material" or relevant about the comments of prior counsel in the context of these proceedings.

Contrary to defendants' recitation of "facts" as is apparent from the record, specifically the portions previously cited by Ms. Payne, Ms. Payne fully advised the defendants that their conduct was illegal and that she was not going to participate in it. She also put that fact in a letter and gave it to Thornhill the day before he suspended her the first time (November 5, 2004).[1] She refused to engage in the illegal conduct. She specifically informed Ms. Sharon Malone, her direct supervisor, that she was being ordered to engage in the illegal grade-changing[2] - a material fact acknowledged directly by Ms. Malone as occurring prior to Ms. Payne's initial suspension. Ms. Malone and Ms. Kent let the defendants know that Ms. Payne was refusing the illegal order. Thornhill directly threatened Ms. Payne, through Ms. Kent, on October 29, 2004, with demotion if she did not illegally change the grades assigned. Thornhill also directly threatened Ms. Payne, through Ms. Malone, that if she didn't change the grades, she would be demoted to the undesirable reassignment of BMT

---

[1] Payne deposition, A, pp. 70, 19-22, 24-26, 44, 46-47, 53, 96-102, 104-106 (previously attached); Letter by Payne to Thornhill, Exhibit 1 to Malone deposition, K, pp. 29-32, 21-22, 13-16

[2] Malone deposition, Exhibit K, pp. 13-16, 21-22, 29-32

2

teacher.[3] On November 5, 2004, when, contrary to defendants' assertions in brief, Ms. Payne actually met with Thornhill at the previously appointed time, she was suspended, without any due process for five (5) days for the alleged "refusal to meet", although Ms. Payne did "meet." Also, Thornhill specifically advised Ms. Payne that Lindsey was directly involved, advised Ms. Payne she needed to "lose her morals", i.e., retroactively change the grades already assigned, to keep her job. On November 16, 2004, Lindsey sent Ms. Payne the letter proposing termination (for the same offense as stated for the November 5, 2004, 5-day suspension - double punishment), because Ms. Payne chose to contest the 5-day suspension and on account of the grade situation - also "speech" protected by the 1st Amendment as speech pertaining to due process afforded by the 14th Amendment.

Prior to the January 25, 2005, hearing, and not addressed anywhere in defendants' briefings, was Ms. Payne's January 15, 2005, letter to every member of the School Board, Thornhill, and Lindsey, specifically protesting the illegal harassment, illegal grade change orders, and even citing the statute (**which, contrary to defendants' arguments was well-known to the defendants as this same statute is cited in their policy manual, plaintiff's Exhibit H**). This letter is, without question and even post-*Garcetti*, 1st Amendment protected speech. Yet, ten (10) days after this protected speech, Ms. Payne was suspended for an additional 48 days (in addition to the 5 previously), at the recommendation of defendants, Lindsey and Thornhill, and by the defendant Board.

Also contrary to defendants' assertions in brief, there is ample evidence that defendants acted against Ms. Payne on account of her statements to the media. Ms. Payne spoke with the media prior

---

[3]Malone deposition, K, pp. 8-9, 10-12, 13-17

3

to the January 25, 2005 meeting.[4] As pointed out from Lindsey's testimony on January 25, 2005, at the Board meeting, he derisively referred to her media discussions as "[T]here's been a media blitz, but we haven't done it." The defendants' obvious disgust and retaliatory bias against Ms. Payne on account of her contact with the media was made patent when, upon her return from the second suspension, Thornhill told her directly "he didn't appreciate the media" and thereafter took almost all of her job duties away, threatened her that she was "not going to complain" about anything because if she does, he will remember it and she will "be out", and gave her an extremely undesirable reassignments/effective demotion - "library monitor". To the extent defendants endeavor to argue that there could not be any retaliation against Ms. Payne because she didn't speak to the media until after January 25, 2005, these arguments are plainly without merit, she did speak prior to January 25, 2005. Defendants' arguments also fail to consider the retaliatory acts undertaken post-March 14, 2005, as well as the events leading up to Ms. Payne's constructive discharge.

Finally, conspicuously absent from defendants' briefing is any discussion of the direct testimony of both Thornhill and Lindsey attesting to the fact that the January 25, 2005, discipline against Ms. Payne was being sought because of her refusal to change her students' grades.

**LAW AND ARGUMENT:**

### 1. Summary Judgment Standard

Summary Judgment is granted only where there is no dispute as to any genuine issue of material fact. Credibility assessments are not permitted on summary judgment. In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the

---

[4] Payne Affidavit, Exhibit L

4

non-moving party drawing all inferences in his favor. *Evans v. City of Bishop*, 238 F.3d 586, 589 (5th Cir. 2000). In *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Supreme Court clearly emphasized the paramount role that juries play, stressing that in evaluating summary judgment evidence, courts must refrain from the making of "credibility determinations, the weighing of the evidence, and drawing of legitimate inferences from the facts," which "are jury functions, not those of a judge." *Fierros v. Texas Department of Health*, 274 F.3d 187, 190-191 (5th Cir. 2001).

Fed.R.Civ.P. Rule 56 specifically affords summary judgment, but only on consideration of: "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any." Rule 56 clearly precludes consideration of argument on summary judgment. The defendants' invitation to this Court to consider incompetent summary judgment evidence should summarily be rejected.

## 2.  The Crucial Question of Capacity

Nowhere in defendants' brief is the fundamental question presented in *Garcetti* discussed, much less proven: that is, whether her speech was clearly, undisputably, and solely pursuant to Ms. Payne's official duties. Indeed, it was this question which turned the Court's ear in *Garcetti* and was also one which the Supreme Court clearly determined to be undisputed by any of the parties in *Garcetti*. In *Boykin v. City of Baton Rouge*, 439 F.Supp.2d 605 (M.D. La. 2006), a case which undersigned personally litigated, the crucial fact in the Court's opinion was that the plaintiff's job as Human Resource Director encompassed his evaluation and speech about EEOC issues in the workplace. (Noted, however, is that this matter recently concluded and, by settlement, further appeal was foregone.) A similar finding was made by the 11th Circuit decision cited by the

Case 3:05-cv-00820-JJB-CN    Document 35    11/20/06    Page 5 of 11

defendants herein, that is, the junior varsity cheerleading coach's concerns about the fairness of tryouts was speech pursuant to her official duties as the junior varsity cheerleading coach.

However, in each of the three (3) cases cited by the defendants, there was little or no contest that each of the plaintiffs' speech was made as part and parcel of their official job duties. Such is simply not the case here. The question of whether Ms. Payne's official job duties included her illegally changing grades, or required her to report, complain, protest illegal conduct, is very much one in dispute. In her original filing, Ms. Payne attached the Board's job description, along with Ms. Payne's Affidavit, attesting to her job duties, which plainly did not include protesting, reporting, complaining about this illegal conduct. Ms. Payne was simply not the district attorney in *Garcetti*, nor the Human Resource Director in *Boykin*.

Ms. Payne was an English teacher. Her protest and speech, including that to the media, and her January 15, 2005, letter to all of the defendants, was in her capacity as a citizen, a mother, and an employee concerned about the integrity of the education process.

Genuine issues of material fact exist precluding summary judgment under *Garcetti*; specifically, that of Ms. Payne's capacity at the time of her initial protest of the illegal conduct, her capacity at the time she wrote the open letter to the Board and defendants (a normal behavior for citizens), her capacity at the time she spoke to the media.

### 3. Application of the *Pickering* Factors

The parameters of liability for the defendants in this case were set forth by the Supreme Court in *Pickering v. Board of Education, Will County*, 391 U.S. 563, 88 S.Ct. 1731 (1968). The four (4) tenets of *Pickering* are: 1) an adverse employment action; 2) the speech must involve a matter of public concern; 3) the plaintiff's interest in commenting on matters of public concern must

6

outweigh the defendant's interest in promoting efficiency; and 4) the plaintiff's speech motivated the defendant's actions. *Finch v. Fort Bend*, 333 F.3d 555, 563 (5th Cir. 2003); *Harris* at 216.

In this case, Ms. Payne suffered a panoply of adverse employment action. First, she was threatened, harassed, and then suspended for five (5) days on November 5, 2004. Second, she was threatened, harassed, and then suspended for 48 days more on January 25, 2005. Third, she was effectively demoted (library monitor) and the bulk of her classes stripped from her on March 14, 2005. Finally, she was continually threatened, harassed, and constructively discharged from her job in June, 2005. In short, she suffered four (4) instances of "adverse employment action", over and above and distinct from the retaliatory harassment (5th instance) which is also actionable under the Supreme Court's recent opinion in *Burlington Northern and Santa Fe Railway Company v. White*, 126 S.Ct. 2405, 2409, 2414-2417, 165 L.Ed.2d 345 (6/22/2006); see also: *Click v. Copeland*, 970 F.2d 106, 109 (5th Cir. 1992), where the Fifth Circuit held that a transfer, alone, deprived an employee of his/her rights or privileges as did **even the threat of discharge.**

Ms. Payne testified, as did Ms. Malone, Thornhill and Lindsey, that Ms. Payne's refusal to break the law and her speech regarding same to the defendants and the media, motivated their actions toward her. It is clear that the education of our children is a matter of prominent public concern. In addition, as Louisiana law makes clear, a teacher's assignment of grades is a matter of such prominent public concern, it is illegal to pressure any teacher to change grades. The integrity of the education process, including State ranking, is a matter of prominent public concern. Ms. Payne's speech on these issues meets the second and fourth prongs of the *Pickering* balancing test.

In *Branton v. City of Dallas*, 272 F.3d 730 (5th Cir. 2001), the Fifth Circuit, through a rather exhaustive analysis found that an internal affairs officer's entirely internal and off-the-record

7

statement to the Assistant City Manager regarding the veracity of a single, unsworn statement by a police officer during an informal hearing constituted First Amendment protected speech. Reciting the *Pickering* test, the *Branton* Court reviewed: 1) whether the employee's speech can be fairly characterized as constituting speech on a matter of public concern; 2) balanced against the employee's interest, as a citizen, in commenting upon matters of public concern against the interest of the employer in promoting the efficiency of the public services it performs through its employees.

Making the initial determination of whether speech by an employer to her government employer was protected, the *Branton* Court, drawing upon a plethora of jurisprudence, opined:

> Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.' *Connick*, 461 U.S. at 146. While speech pertaining to internal personnel disputes and working conditions ordinarily will not involve public concern, *id* at 148, speech 'complaining of misconduct within the police department. . . [is] speech addressing a matter of public concern.' *Thompson v. City of Starkville, Mississippi*, 901 F.2d 456, 463 (5th Cir. 1990); *Wallace v. Texas Tech. Univ.*, 80 F.3d 1042, 1051 (5th Cir. 1992). 'Speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials. . . concerns matter of public import.' . . In making this determination, we consider the 'content, form, and context of a given statement, as revealed **by the whole record**.' *Connick*, 461 U.S. at 147-48.
> 
> *Branton*, at 739-740 (emphasis added).

It is clear that Ms. Payne's speech was not "solely" a personnel matter or "strictly a discussion of management policies", rather it constituted the report of conduct made illegal under Louisiana law - speech which disclosed "evidence/report of corruption, wrongdoing, impropriety, or other malfeasance on the part of city officials." *Branton*; *Wallace v. Texas Tech. University*, 80 F.3d 1042, 1050-1051 (5th Cir. 1996); see also: See: *Denton v. Morgan*, 136 F.3d 1038 (5th Cir. 1998).

Ms. Payne's interest on commenting on these matters of public concern clearly outweighs any of the defendant's interests in promoting efficiency. Ms. Payne spoke as a mother whose children attending WFP schools, an educator with a long and distinguished career, and a citizen of

8

West Feliciana Parish. Her interests in commenting on the education of children and abiding by the law in the educational process, far outweigh any feigned interests the defendants may profess in the efficiency of the school. It bears reminder that, although the defendants contend Ms. Payne was suspended (both times, apparently) for "refusing to meet" with Thornhill and Lindsey (when, as the facts show she actually did on November 5, 2004, at the time selected by them), Ms. Payne, and her evidence shows the real motivation for the employment actions was her speech. Hence, Ms. Payne, under disputed facts, satisfies the third prong of *Pickering*.

It is additionally noted that, upon her return on March 14, 2005, Thornhill made it clear to Ms. Payne that he "didn't appreciate the media" when he gave her the undesirable reassignments, essentially stripped her of her duties, threatened her, effectively demoted her, harassed her, and forced her constructive discharge. There can be no legitimate balance within the ambit of "efficiency" on the part of the defendants where their actions in March, 2005, and through June, 2005, clearly removed a gifted, long-term, and esteemed English teacher from the classroom to serve as a library monitor. Inefficiency, in this regard, is a clear understatement.

**CONCLUSION:**

For the reasons set forth herein, in Plaintiff's Memorandum Regarding First Amendment Claims, the evidence of record, and the law, it is clear that the existence of genuine issues of material fact preclude the grant of summary judgment herein. Chief among the issues of material fact in dispute is the capacity of Ms. Payne when she spoke, protested, reported, wrote her November 4, 2004, letter of protest to Thornhill immediately prior to her first suspension, wrote the January 15, 2005, letter to every member of the Board, Thornhill, and Lindsey, spoke to the media. Defendants presented no undisputed evidence of Ms. Payne's capacity when she spoke and, hence, under

9

*Garcetti*, summary judgment is not permissible.

It is also shown that clear and genuine issues of material fact exist regarding the imprimatur for the 5-day suspension, the 48-day suspension, the retaliatory harassment, the demotion, undesirable reassignment, and constructive discharge. Defendants contend they acted because Ms. Payne "refused to meet", yet, the evidence is plain that Ms. Payne did meet with the defendants, at their appointed time on November 5, 2004. There has been no undisputed showing by the defendants, contrary to Ms. Payne's evidence, that their actions against her were not on account of her speech. Even defendants' contention that Ms. Payne didn't "speak" a protest is wrong. The evidence shows Ms. Payne gave Thornhill her letter attached to her November 5, 2004, memo regarding her desire to have an LAE representative present, protesting the illegality of his order, Ms. Payne told the defendants their conduct was illegal, as well as her direct supervisor, Ms. Malone, and Board employee, Ms. Kent. This contention also overlooks and disregards Ms. Payne's letter to all of the defendants on January 15, 2005 - 10 days before her 44-day suspension on January 25, 2005. Defendants' other contention that Ms. Payne didn't speak to the press before the January 25, 2005, is also wrong. Even Lindsey, in his January 25, 2005, testimony referred to the "media attention" and blamed Ms. Payne for it, as did Thornhill on March 14, 2005, when Ms. Payne returned to her job and at the time he effectively demoted her, ultimately forcing her from employment.

*Garcetti* is not the automatic trigger as one would expect from a cursory review. Indeed, *Garcetti* makes only a distinction where there is absolutely no issue of the capacity of the speaker. Such is not the case at bar. *Garcetti* supports the denial of summary judgment herein on the plaintiff's First Amendment Retaliation claims against defendants, Board, Lindsey, and Thornhill.

Respectfully submitted,


BY:   s/Jill L. Craft
Jill L. Craft, T.A., #20922
Attorney at Law, LLC
8702 Jefferson Hwy., Suite B
Baton Rouge, Louisiana 70809
(225) 928-5353
Fax: (225) 924-7480
E-mail: jcraft@bitworx.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 20th day of November, 2006, I have served a copy of the above and foregoing Plaintiff's Memorandum in Opposition to Defendants' Partial Motion for Summary Judgment with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to Frank V. Endom, Jr. and Robert L. Hammonds by operation of the Court's electronic filing system.

Baton Rouge, Louisiana, this 20th day of November, 2006.

      s/Jill L. Craft
      Jill L. Craft